Opinion issued August 6, 2013



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00521-CR

_____

**AGHAEGBUNA ODELUGO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1249652**

---

## O P I N I O N

Appellant, Aghaegbuna Odelugo, without an agreed punishment recommendation from the State, pleaded guilty to the offense of engaging in

organized criminal activity, namely, aggregate theft of over $200,000,[1] and the trial court assessed his punishment at confinement for eighteen years. In four issues, appellant contends that he received ineffective assistance of counsel, his guilty plea was involuntary, and the trial court erred in denying his motion for new trial.

We reverse and remand.

## Background

In regard to his plea of guilty to the offense of engaging in organized criminal activity, appellant stipulated to conspiring with Kodigbo Odelugo and Chukwuma Odelugo to appropriate over $200,000 owned by Sharon Thompson, Mark Porter, the Texas Health and Human Services Commission, and The Centers for Medicare and Medicaid Services. During the plea proceedings, the trial court asked appellant's trial counsel, Erik Sunde,

> [H]ave you talked with your client and is it your feeling that he is
> competent to stand trial and understands the nature and consequences
> of his plea and signed this paperwork freely and voluntarily?

Sunde responded, "Yes, Your Honor." Appellant also signed written admonishments, one of which states, "If you are not a United States citizen, pleading guilty or no contest to a criminal charge may result in removal, denial of

---

[1]     *See* TEX. PENAL CODE ANN. § 71.02(a)(1) (Vernon 2011).

naturalization or exclusion from admission into this country." Appellant agreed to pay $600,000 in restitution at his sentencing hearing, which was set for a later date.

Before the trial court concluded the subsequently-held sentencing hearing, appellant, a non-citizen, filed a motion to withdraw his guilty plea, arguing that his plea was involuntary because his counsel did not apprise him of the mandatory immigration consequences of his plea.[2] Later, at a hearing on appellant's motion to withdraw his plea, Sunde stated to the court,

> I have previously represented to the Court that I read the admonishment to him but we had no further discussions beyond that at that time. We subsequently had discussions but not at that time. Our discussions focused more on the Federal case that was pending. . . .
>
> I would also suggest that as a legal proposition his testimony is not necessary to assess legally whether or not the old admonishment that this Court read to him, that I read to him is legally sufficient under *Padilla*. So we would not call any witnesses, Your Honor.

The trial court denied appellant's motion to withdraw his guilty plea, and, later, after it had concluded the sentencing hearing, assessed appellant's punishment at confinement for eighteen years.

In his new-trial motion, appellant argued that he had received ineffective assistance of counsel because Sunde "had an actual conflict of interest" and "did not advise him of . . . certain immigration consequences of his guilty plea." He asserted that he had delivered $285,000 to Sunde to pay the $600,000 in restitution

---

[2] *See Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010).

he was to pay the court pursuant to his guilty plea. However, Sunde did not use the money to pay the required restitution and instead told appellant that the money was "gone and unavailable." Appellant asserted that Sunde "misappropriated the funds making payment to the State impossible."

Appellant attached to his motion his affidavit, in which he testified,

[Sunde] eventually informed me that if I plead guilty and paid $600,000 in restitution I would receive deferred adjudication on the state case. I delivered to Mr. Sunde a check for $160,000 on January 27, 2010. . . . Sentencing was scheduled for April 30, 2010. On the plea papers, it was noted that $600,000 in restitution was to be paid by that date. My sentencing was postponed repeatedly so that the federal charges could be resolved. No restitution was paid to the State. During the summer of 2010, I delivered to Mr. Sunde an additional $125,000 to be used for restitution. The funds were to be held in trust to be paid to the State of Texas pursuant to the original plea agreement.

During the summer of 2011, I asked for the return of the funds since no restitution had been paid. . . . He told me that he sent the money to Colombia and the money was gone. He told me that he would try to get it back. . . .

[Sunde] has given me no accounting of how or when he spent my money. He never asked permission to spend my money until after I contacted another attorney to represent me on appeal. Mr. Sunde came to visit me in the Harris County courthouse holdover one morning about one week before I was sentenced. Mr. Sunde told me that he had spoken to Stanley Schneider, and lied about the funds, asserting to Mr. Schneider that he had applied them toward my legal fees. Mr. Sunde stated that he knew that it was not true but asked me to go along with the lie and he would get me the money in 30 days. . . . During the three years that he represented me, [Sunde] never asked me for money nor did he tell me that he was applying the money being held in trust for restitution to his fees.

4

At the hearing on his new-trial motion, the trial court took judicial notice that it had held a prior evidentiary hearing on appellant's motion to withdraw his guilty plea and denied the motion. Appellant then testified that he retained Sunde for $25,000 to represent him in the underlying case and a related federal prosecution against him. When he hired Sunde, appellant was concerned about his immigration status, and Sunde told appellant that if he paid $600,000 in restitution, adjudication of his guilt would be deferred in the underlying case and it would be dismissed.

Appellant offered into evidence a check that he had written to Chase Bank for $160,000, which he used to obtain a cashier's check to give to Sunde "to pay in his trust account towards my restitution." On the "memo" line of the check, appellant had written, "Erik Sunde for Court/Arena theater." Appellant also offered into evidence a second check that he had written to "Erik Sunde Attorney at Law IOLTA" for $85,000. On the memo line of the second check, appellant had written, "State Restitution - $275,000." And he offered into evidence a third check that he had written for $40,000 to Chase Bank to purchase a cashier's check to give to Sunde, with the notation, "Erik Sunde – Restitution."

Appellant testified that in September 2011, he asked Sunde to return the money, but Sunde returned only a check for $20,000 and "maybe" $5,000 to $10,000 in cash. Appellant explained that he had not authorized Sunde to use his

5

money for his attorney's fees, expenses, or any purpose other than paying his restitution. He noted that before pleading guilty in both the state and federal cases, Sunde had not discussed the immigration consequences of his plea. And appellant noted that he did not "want a trial," but wanted to "pay off the restitution."

Sunde asserted his Fifth Amendment right against self-incrimination in connection with appellant's new-trial hearing, and refused to testify.

At the conclusion of the hearing, the State agreed to the following oral stipulation, which the trial court accepted:

> [B]ased on the conversation that Mr. Clark and Mr. Sunde had, . . . Sunde did admit he did receive a substantial amount of money from [appellant] that was placed in trust, he did not have a contract with [appellant], he didn't know the exact amount of the money that he received but it was a substantial amount of money.

The trial court noted that it did not make any guarantees that if appellant paid $600,000 in restitution by the sentencing hearing, it would have deferred adjudication of his guilt and placed him on community supervision. The trial court then denied appellant's new-trial motion.

## Standard of Review

In order to establish his ineffective-assistance-of-counsel claim based on a conflict of interest, appellant must show that (1) his counsel had an *actual* conflict of interest and (2) the conflict adversely affected counsel's performance at trial. *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007). An actual conflict

exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *Id.*; *James v. State*, 763 S.W.2d 776, 778–79 (Tex. Crim. App. 1989) (en banc). A defendant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action. *Ramirez v. State*, 13 S.W.3d 482, 488 (Tex. App.—Corpus Christi 2000, pet. dism'd) (quoting *Perillo v. Johnson*, 79 F.3d 441, 447–48 (5th Cir. 1996)).

We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006 pet. ref'd). Where, as here, the motion for new trial alleges ineffective assistance of counsel, we must determine whether the trial court's determination of the ineffective-assistance claim and denial of the motion for new trial were clearly wrong and outside the zone of reasonable disagreement. *Id*. We note that trial courts remain in the best position to "evaluate the credibility" of witnesses and resolve conflicts in evidence. *See Koher v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). And a trial court may choose to believe or disbelieve all or any part of the witnesses' testimony. *See id.*

### Conflict of Interest

In his first and second issues, appellant argues that the trial court abused its discretion in denying his new-trial motion because Sunde's "misuse of funds

deposited in [his attorney] trust account for payment of restitution" constituted a conflict of interest.

Here, appellant offered into evidence three checks, totaling $285,000, which he gave to Sunde to place in his trust account for payment of restitution. In appellant's testimony, which was uncontroverted due to Sunde's invocation of his Fifth Amendment right not to incriminate himself,[3] appellant noted that he had written a check for $160,000 made payable to Sunde. Appellant also wrote a check for $40,000 and another for $85,000, for which he received cashier's checks, which he then gave to Sunde to place in his trust account to pay appellant's restitution. Appellant explained that he did not give Sunde permission to use the money for anything other than to pay his restitution. And Sunde advised him not to report the money on any "financial information sheets." Appellant intended to use the $285,000 to pay towards the $600,000 in restitution that the State requested be paid by the date of the sentencing hearing. And, although appellant was led to believe that if he paid the $600,000 in restitution by his sentencing date, the trial court would defer adjudication of his guilt, Sunde informed appellant before the sentencing hearing that the money was not available.

Furthermore, in appellant's affidavit attached to his new-trial motion, and which was also uncontroverted, he testified that Sunde had informed him that

---

[3] *See* U.S. CONST. amend. V.

8

Sunde had "sent the money to Colombia." One week before appellant's sentencing hearing, Sunde told appellant that he had lied to others and told them that he had applied the money to payment of his legal fees. Sunde "asked [appellant] to go along with the lie" so that he could "get [] the money in 30 days." And the State stipulated that Sunde had in fact received a "substantial amount of money" from appellant that was placed into a trust account, although Sunde could not remember the total amount.

Thus, appellant's uncontroverted testimony and affidavit established that he gave Sunde $285,000 to pay towards restitution, which Sunde did not pay. Indeed, rather than explain what happened to the money, Sunde invoked his right not to incriminate himself. *See* U.S. CONST. amend. V. A lawyer's self-interest can constitute an "actual conflict of interest" when trial counsel makes a choice between advancing his own interest and "advancing his client's interest in a fair trial." *See Acosta*, 233 S.W.3d at 354–55 (holding that standard that defendant must show actual conflict of interest extends to conflicts pertaining to lawyer's self-interest); *Monreal v. State*, 947 S.W.2d 559, 565 (Tex. Crim. App. 1997) (en banc) (rejecting allegation of conflict of interest between lawyer's self-interest and defendant's interest where "trial counsel was not required to make a choice between advancing her client's interest" and her own); *Adams v. State*, No. 14-08-01048-CR, 2010 WL 724311, at *2–3 (Tex. App.—Houston [14th Dist.] Mar. 4,

2010, pet. ref'd) (mem. op., not designated for publication).  Here, if Sunde used the money given to him by appellant for his own interests rather than paying appellant's restitution, as alleged by appellant, he would be advancing his own interests ahead of appellant's, constituting an actual conflict of interest.  *See Acosta*, 233 S.W.3d at 355.  And Sunde's invocation of his own Fifth Amendment right in connection with appellant's new-trial hearing about matters concerning Sunde's legal representation of appellant in connection with the plea agreement and payment of restitution was itself an advancement of Sunde's interests above appellent's interests.

Appellant must also show that the conflict of interest adversely affected him at trial.  He testified that because the money was not available, he was not able to pay $600,000 in restitution by the date of his sentencing hearing.  Although the trial court stated that it would not have held its sentencing hearing with the understanding that adjudication of appellant's guilt would be deferred if he paid $600,000 in restitution, the payment of such a significant amount of restitution would have constituted a serious factor to consider in sentencing.  And the trial court noted that the $600,000 in restitution was a condition added into the plea papers by the State.  It is apparent that the State would have sought a lesser punishment for appellant had he been able to pay the restitution.  Thus, appellant has established, through his uncontroverted testimony and evidence, that his

counsel's actual conflict of interest adversely affected him at trial. *See Acosta*, 233 S.W.3d at 355.

Accordingly, we hold that the trial court erred in denying appellant's new-trial motion on the ground that his trial counsel had a conflict of interest.

We sustain appellant's first and second issues.

Having sustained appellant's first and second issues, we need not reach his third and fourth issues, in which he argues that the trial court erred in denying his new-trial motion on the ground that his trial counsel failed to adequately inform him of the immigration consequences of his guilty plea.

## Conclusion

We reverse the judgment of the trial court and remand the case for a new trial.

Terry Jennings<br>
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Publish.   TEX. R. APP. P. 47.2(b).

11