

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1198-13

### AGHAEGBUNA ODELUGO, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., filed a concurring opinion. MEYERS, J., filed a dissenting opinion.

### O P I N I O N

After pleading guilty to the offense of engaging in organized criminal activity on the advice of his retained trial counsel, the appellant filed a motion for new trial alleging a conflict of interest on counsel's part. At the trial court's hearing on the motion, trial counsel, accused of having misappropriated certain funds entrusted to him by his client, invoked his

Fifth Amendment right to refuse "to be a witness against himself."[1] In response, the appellant argued to the trial court that "[a]n inference can be taken from that" that trial counsel had misappropriated the funds. The trial court declined to adopt that inference and denied the motion.

In a published opinion, the First Court of Appeals, noting that the entirety of the evidence offered by the appellant in support of his motion for new trial was "uncontroverted due to [trial counsel]'s invocation of his Fifth Amendment right not to incriminate himself," held that the trial court had abused its discretion in denying the motion.[2] It reversed the trial court's judgment (thereby effectively vacating the appellant's conviction) and remanded the matter back to that court for a new trial.[3] The State has petitioned this Court for discretionary review of the court of appeals's opinion. We will reverse and remand.

## I. FACTS AND PROCEDURAL POSTURE

### A. Plea

The appellant retained trial counsel in the summer of 2008 to defend him against charges of engaging in organized criminal activity by committing, along with several co-

---

[1] U.S. CONST. amend. V.

[2] *Odelugo v. State*, 410 S.W.3d 422, 426-27 (Tex. App.—Houston [1st Dist.] 2013).

[3] *Id.* at 427.

conspirators, aggregate theft in an amount over two hundred thousand dollars.[4] On the advice of trial counsel, and without an agreed recommendation on punishment from the State, the appellant entered a plea of guilty to that offense on February 1, 2010. Pursuant to his plea, the appellant agreed to pay $600,000 in restitution by April 30, 2010, the originally scheduled sentencing date. Over the next two years, however, the appellant filed several successful motions to reset the sentencing date as he attempted to resolve a related federal proceeding. During that time, he also filed a motion to withdraw his plea "because he was not apprised of the *mandatory* immigration consequences of his plea[,]"[5] but the trial court denied this motion.[6] Finally, on March 5, 2012, the trial court entered a judgment of conviction and sentenced the appellant to an eighteen-year term of imprisonment.

### B. Motion for New Trial

On March 22, 2012, the appellant, now represented by appellate counsel, filed a

---

[4] *See* TEX. PENAL CODE § 71.02(a)(1); *id.* §§ 31.03(b)(1), (e)(7). In fact, the appellant and his cohort were accused of defrauding the Texas Health and Human Services Commission and the Centers for Medicare and Medicaid Services out of at least $1,695,000.

[5] Emphasis in original. *See Padilla v. Kentucky*, 559 U.S. 356 (2010).

[6] *See* George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 40:59, at 571-72 (3d ed. 2011) ("A defendant has a right to withdraw a plea of guilty or nolo contendere in a jury-waived proceeding 'without assigning reason until [the] judgment has been pronounced or the case has been taken under advisement.' . . . If the trial court accepts a plea of guilty or nolo contendere and recesses the proceedings for a presentence investigation report, the case has been taken under advisement when recessed. An attempt by the defendant to withdraw the plea when court reconvenes for sentencing comes too late and is addressed to the discretion of the trial court.") (quoting *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979)).

motion for new trial in which he alleged that he had "received ineffective assistance of counsel . . . because trial counsel had an actual conflict of interest[.]" According to the appellant, trial counsel "transferred to himself, without Defendant's permission, a pecuniary interest in funds Defendant provided [to counsel] for restitution payments[.]" Attached to this motion was an affidavit, signed by the appellant, wherein he stated the following:

> [Trial counsel] . . . informed me that if I plead guilty and paid $600,000 in restitution I would receive deferred adjudication on the state case. I delivered to [trial counsel] a check for $160,000 on January 27, 2010. On February 1, 2010, I entered a plea of guilty to the first degree felony charge. * * * My sentencing was postponed repeatedly so that the federal charges could be resolved. No restitution was paid to the State. During the summer of 2010, I delivered to [trial counsel] an additional $125,000 to be used for restitution. The funds were to be held in trust to be paid to the State of Texas pursuant to the original plea agreement.

> During the summer of 2011, I asked for the return of the funds since no restitution had been paid. * * * I received between $60,000 and $80,000 from [trial counsel]. He told me that he sent the money to Colombia and the money was gone. * * * I was concerned that he spent all of the money that I had given him for restitution. I was told the money that I had given him that was earmarked for restitution was spent. He has given me no accounting of how or when he spent my money. * * * During the three years that he represented me, he never asked me for money nor did he tell me that he was applying the money being held in trust for restitution to his fees.

The appellant went on to assert in his affidavit that when he retained "new counsel"—that is, appellate counsel—he was "immediately" able to pay $200,000 in restitution and that he "could have paid the $600,000" were it not for trial counsel's malfeasance.

The trial court held a hearing on the motion for new trial, at which time the appellant offered into evidence "copies of three checks that were delivered to [trial counsel] from Mr.

Odelugo totaling $285,000." The appellant also took the witness stand to testify in support of his motion and reasserted many of the claims he had made in his affidavit. Near the end of the hearing, the State acceded to an oral stipulation that "[trial counsel] . . . did receive a substantial amount of money from Mr. Odelugo that was placed in trust[.]"[7]

However, when appellate counsel sought to call trial counsel as a witness "and question him about the deposit in the IOLTA account and expenditures[,]" trial counsel's attorney informed the trial court that trial counsel "would be invoking" his Fifth Amendment right to refuse to provide incriminating testimony against himself. Thus unable to question trial counsel as to why the funds placed in trust had not been applied toward the appellant's restitution, appellate counsel could only argue that "[a]n inference can be taken from" trial counsel's invocation of his Fifth Amendment right "that . . . an actual conflict" existed between trial counsel's interests and those of the appellant. The trial court disagreed, observing that "[s]ilence is not evidence of guilt," and ultimately denied the appellant's motion for new trial. Appeal was taken to the First Court of Appeals.

## C. On Appeal

Starting from the premise that "[a] lawyer's self-interest can constitute an 'actual

---

[7]   The State declined to stipulate to the exact amount of money placed in trial counsel's trust, conceding only that, in a prior *ex parte* conversation with the prosecutor, trial counsel had "admit[ted] he did receive a substantial amount of money from Mr. Odelugo." In a similar fashion, the State emphasized to the trial court that its stipulation did *not* include a concession "that the substantial amount of money that went to [trial counsel] was for restitution." Rather, the prosecutor claimed ignorance as to the purpose of the appellant's monetary remittance to trial counsel: "Where it went, I don't know. I just know at one point he had money in the account from Mr. Odelugo. I don't know if it was for State restitution, I don't know if it was for Federal restitution."

conflict of interest' when trial counsel makes a choice between advancing his own interest and 'advancing his client's interest in a fair trial,'" the court of appeals reasoned that, "if [trial counsel] used the money given to him by appellant for his own interests rather than paying appellant's restitution, as alleged by appellant, he would be advancing his own interests ahead of appellant's constituting an actual conflict of interest."[8] In this regard, the court of appeals found it crucially significant that "appellant's testimony . . . was uncontroverted due to [trial counsel]'s invocation of his Fifth Amendment right not to incriminate himself."[9] Thus, while acknowledging that "a trial court may choose to believe or disbelieve all or any part of the witnesses' testimony,"[10] the court of appeals seemed to fault the trial court for failing to credit the appellant's assertions that trial counsel "misuse[d] . . . funds deposited in [trial counsel's] trust fund account for payment of restitution."[11] The court of appeals also alternatively ruled that "[trial counsel]'s invocation of his own Fifth Amendment right in connection with appellant's new trial hearing . . . was *itself* an advancement of [trial counsel]'s interests above appellant's interests."[12]

---

[8]

*Odelugo*, 410 S.W.3d at 426-27 (citing *Acosta v. State*, 233 S.W.3d 349, 354-55 (Tex. Crim. App. 2007)).

[9]

*Id.* at 426.

[10]

*Id.*

[11]

*Id.*

[12]

*Id.* at 427 (emphasis added).

Conducting a harm analysis, the court of appeals determined that trial counsel's "uncontroverted" misconduct hindered the appellant's ability to pay the agreed-upon $600,000 in restitution and that "the payment of such a significant amount of restitution would have constituted a serious factor [for the trial court] to consider in sentencing."[13] The court therefore concluded that the appellant had, to its satisfaction, "established . . . that his counsel's actual conflict of interest adversely affected him at trial."[14] On this basis, the court of appeals held that "the trial court erred in denying appellant's new-trial motion on the ground that his trial counsel had a conflict of interest," and accordingly reversed the judgment of the trial court and remanded the case for a new trial.[15]

In its petition for discretionary review, the State contends that "[t]he court of appeals erred in finding an actual conflict of interest based on the 'appellant's uncontroverted testimony and affidavit,' when the trial court could have resolved the underlying factual issues against the appellant."[16] Specifically, the State points out that, apart from his own potentially self-serving affidavit and testimony, the appellant's claim "that he gave money to [trial counsel] earmarked for restitution, but . . . [trial counsel] used it for other purposes

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] State's Petition for Discretionary Review at 3.

without authorization[,]" is "simply not supported by the record."[17] The trial court being "in a much better position than the appellate court to judge the credibility and believability of the appellant's claims," the court of appeals should not have overturned "the implicit findings by the trial court [that] the appellant failed in his burden to show an actual conflict of interest."[18] The State accordingly calls upon this Court to "reverse the lower court's opinion" and "affirm the judgment of the trial court."[19]

## II. THE LAW

"[T]he proper standard by which to analyze claims of ineffective assistance of counsel due to a conflict of interest is the rule set out in *Cuyler v. Sullivan*, that is, the appellant must show that his trial counsel had an actual conflict of interest, and that the conflict actually colored counsel's actions during trial."[20] We have said that "[a]n 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client."[21] The appellant bears the burden of proof by a preponderance of the evidence on a claim of

---

[17] *Id.* at 13.

[18] *Id.* at 15-16.

[19] *Id.* at 16.

[20] *Acosta*, 233 S.W.3d at 356 (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)).

[21] *Id.* at 355 (citing *Monreal v. State*, 947 S.W.3d 559, 564 (Tex. Crim. App. 1997)).

conflict-of-interest ineffective assistance,[22] which is to say that if "no evidence has been presented on the issue" or in the event that "the evidence relevant to that issue is in perfect equipoise," the appellant's claim will fail.[23]

By virtue of the fact that the trial court is charged with initially ruling on an appellant's motion for new trial,[24] that court will decide, in the first instance, whether the appellant has carried his burden with respect to the elements of his claim of conflict-of-interest ineffective assistance. In doing so, the trial court "has the right to accept or reject any part of a witness's testimony[.]"[25] Indeed, as "the sole factfinder and judge" of the credibility and weight of each piece of evidence, whether presented "during live testimony" or "in affidavits,"[26] the trial court is "within its right to disbelieve" *any* of the "assertions upon which [the] appellant's claims of ineffective assistance of counsel are based," so long

---

[22]

*E.g.*, *Banda v. State*, 890 S.W.2d 42, 59-60 (Tex. Crim. App. 1994).

[23]

*Broxton v. State*, 909 S.W.2d 912, 920 (Tex. Crim. App. 1995) (Clinton, J., dissenting) ("It is the function of a burden of proof to determine which party should prevail on a particular issue in the event the evidence relevant to that issue is in perfect equipoise.").

[24]

TEX. R. APP. P. 21.6, 21.8 ("The defendant must present the motion for new trial to the trial court within 10 days of filing it[.] * * * The trial court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court.").

[25]

*Charles v. State*, 146 S.W.3d 204, 208 & n.7 (Tex. Crim. App. 2004) (citing *Beck v. State*, 573 S.W.2d 786, 791 (Tex. Crim. App. 1978)) (discussing the role of the trial judge as factfinder on motion for new trial).

[26]

*Riley v. State*, 378 S.W.3d 453, 459 (Tex. Crim. App. 2012) (also discussing the role of the trial judge as factfinder on motion for new trial).

as the basis for that disbelief is supported by at least one "reasonable view of the record."[27]

This is true even when the State does not deign to controvert the evidence, affidavit or otherwise, that the appellant presents.[28] Finally, because claims of ineffective assistance of counsel involve "mixed questions of law and fact" that often "contain[] 'subsidiary questions of historical fact, some of which may turn upon the credibility and demeanor of witnesses,'"[29] an appellate court should review the trial court's rulings on the matter "for an abuse of discretion, reversing only if the trial judge's ruling was clearly erroneous and arbitrary[,]" such as when "no reasonable view of the record could support the trial court's ruling."[30]

### III. ANALYSIS

**A. Did the trial court err by failing to find that trial counsel had misappropriated the appellant's funds, given that the appellant's evidence was "uncontroverted"?**

In this case, in holding that the trial court abused its discretion by denying the

---

[27] *Charles*, 146 S.W.3d at 208, 212.

[28] *Id.* at 210. After all, the State does not bear the burden of proof on a claim of ineffective assistance of counsel, and its failure to present evidence—or even to undermine the evidence introduced by the appellant—does not necessarily mean that the appellant has presented sufficient evidence to meet the preponderance standard. Indeed, an appellant's presentation of sufficient evidence to support a factfinder's determination does not entitle him to a favorable ruling from the factfinder so much as it effectively insulates an initial favorable determination from subsequent appellate scrutiny.

[29] *Riley*, 378 S.W.3d at 458 (quoting *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999)).

[30] *Id.* at 457.

appellant's motion for new trial, the court of appeals apparently reasoned that, because the appellant's signed checks, affidavits, and live testimony were all "uncontroverted," the trial court erred by failing to find that "[trial counsel] used the money given to him by appellant for his own interests rather than paying appellant's restitution."[31] The court of appeals also found it significant that "the State stipulated that [trial counsel] had in fact received a 'substantial amount of money' from appellant that was placed into a trust account[.]"[32] In his reply brief to the State's petition for discretionary review, the appellant adds that because "a person may invoke the right against self incrimination" only when "the invocation [is] based on the reasonable belief that a truthful answer could be used against the person in a criminal prosecution[,]" the trial court should have weighed counsel's invocation of his Fifth Amendment right as evidence tending strongly to support the claim that trial counsel had used the appellant's money in some untoward (indeed, criminal) fashion.[33]

First, we do not necessarily disagree with the court of appeals that, because the appellant's evidence was uncontested, the trial court would have acted reasonably to believe the appellant's claims and find that he had met the preponderance standard; that is undoubtedly *one* reasonable view of the record. But the trial court's ruling should

---

[31] *Odelugo*, 410 S.W.3d at 426-27.

[32] *Id.* at 426.

[33] *See* Appellant's Brief at 5-8.

not—indeed, cannot, consistent with our case law—be exhaustively scrutinized from a single vantage. It must be inspected from every reasonable vantage in the light most favorable to the trial court's ruling, and found to have been deficient in each, before it may be overturned as an abuse of discretion. And in this case, there is at least one reasonable view of the record that would support the trial court's denial of the appellant's motion for new trial, notwithstanding the "uncontroverted" nature of the appellant's evidence.

As mentioned, the trial court, as the finder of fact on a motion for new trial, retains the prerogative to believe or disbelieve any evidence the probativeness of which depends on the credibility of its source—regardless of whether that evidence was "controverted" by the opposing party.[34] In this case, this includes all of the assertions made by the appellant regarding whether, how, and when he instructed trial counsel to apply the funds placed in counsel's trust. If the trial court did not accept the appellant's account of the events leading up to his failure to make the promised restitution payment as credible, it would have acted within its discretion to find that the appellant failed to carry his burden to establish that trial counsel had placed his own interests above the appellant's. Indeed, if the trial court rejected as incredible even *one* of the appellant's factual assertions—that he had provided the funds to trial counsel *for the sole purpose of making state restitution payments*—there would be precious little evidence in the record from which the trial court might draw the inference that trial counsel ever went against the wishes of his client. And the trial court would have acted

---

[34] *Charles*, 146 S.W.3d at 210.

within its discretion to decide that whatever evidence remained after discounting the appellant's testimonial evidence would not suffice to meet the preponderance standard.

One such piece of evidence—that is, one for which the probativeness in no way depended on the trial court's assessment of the credibility of the appellant—is the State's stipulation that "[trial counsel] . . . did receive a substantial amount of money from Mr. Odelugo that was placed in trust[.]" While the appellant might argue that the State's stipulation alone should suffice to support his claim, again, the operative question is whether the record can reasonably support the trial court's implicit determination that this evidence failed to show, by a preponderance of the evidence, that trial counsel actually served conflicting interests. And the State's stipulation, standing alone, does not necessarily compel the conclusion that counsel spent the money inconsistently with the appellant's wishes; under a reasonable view of the record, the trial court might reasonably have believed both that trial counsel received a "substantial amount of money from" the appellant *and* that counsel never went against the appellant's expressed wishes in his disposition of the funds. Furthermore, even if the trial court deemed the State's stipulation to be some probative evidence that counsel *did* advance his own interests before the appellant's, the trial court retained the prerogative to determine what weight to assign to this evidence and would not have acted unreasonably to determine that, probative though it may be, this evidence did not meet the preponderance standard—did not make it "more likely than not" that trial counsel had, in fact, acted against the appellant's wishes.

Another piece of evidence for which the appellant contends the probativeness is independent of the trial court's opinion of the appellant's credibility, and that demonstrates counsel's conflict of interest, is counsel's invocation of his own Fifth Amendment right. If counsel had acted with good faith in his handling of the appellant's money, the appellant argues, he would have had no reason to invoke his right to refuse to testify. Here again, however, even assuming *arguendo* that it would be permissible for the trial court to weigh trial counsel's invocation of his Fifth Amendment right as some evidence that counsel had acted criminally in his handling of the appellant's funds,[35] it still could not *necessarily* be said, if evidenced only by trial counsel's invocation, that trial counsel used the funds in a manner inconsistent with the appellant's wishes. The record would reasonably support a determination by the trial court either that trial counsel's pleading his Fifth Amendment right was not indicative of whether he disobeyed the client's expressed wishes (as the trial court

---

[35] In its petition for discretionary review, the State cites the Supreme Court case *Spevack v. Klein* to argue that trial counsel would have been justified in asserting his Fifth Amendment right simply to avoid "[t]he threat of disbarment and the loss of professional standing, professional reputation, and . . . livelihood[.]" State's Petition for Discretionary Review at 11 (citing *Spevack v. Klein*, 385 U.S. 511, 516 (1967)). In this regard, the State seems to suggest that the trial court need not necessarily have drawn from his invocation of the Fifth Amendment an inference that trial counsel engaged in criminal activity. The appellant responds that for this Court to indulge in this line of reasoning would be to "expand the Fifth Amendment privilege far beyond what *any* other Court has held," and accordingly urges us to reaffirm the principle that the invocation of the Fifth Amendment "must be based on the reasonable belief that a truthful answer could be used against the person in a criminal prosecution or lead to evidence to be used in a criminal prosecution." Appellant's Reply Brief at 5-6 (citing *Zani v. State*, 701 S.W.2d 249, 252 (Tex. Crim. App. 1985)). Because we assume, without deciding, that it would be permissible for the trial court to draw an inference of criminal activity on trial counsel's part based solely on counsel's invocation of his Fifth Amendment right, and because we nevertheless decide the underlying conflict-of-interest issue against the appellant, we need not weigh in on this particular point of contention between the parties.

put it, "Silence is not evidence of guilt"), or that, while somewhat probative as to this point, it ultimately could not satisfy the preponderance standard. Without some indisputable showing—one for which the *only* reasonable interpretation of the evidence is—that counsel "was required to make a choice between advancing other interests . . . to the detriment of his client's interests[,]"[36] it cannot be said that the trial court erred when it found that no conflict of interest existed.

To be sure, there is no question that the trial court would have acted within its discretion to find that counsel misappropriated his client's funds in precisely the way that the appellant alleged. And we do not take lightly the charge that a legal representative acted against his client's wishes in the handling of the client's property—especially when that property was entrusted to counsel for the purpose of making amends for the client's admitted wrongdoing. But it is not the role of this Court to second-guess the determinations of the trial court on matters of credibility and historical fact merely because we might have decided those matters differently. When, as in this case, the trial court's ruling on a motion for new trial is supported by at least one reasonable view of the record, the ruling may not be disturbed. The court of appeals erred to circumvent this rule.

**B. Was the appellant's right to effective, conflict-free counsel violated *per se* by trial counsel's invocation of his Fifth Amendment right?**

The court of appeals also concluded that, apart from any probative value trial

---

[36] *Acosta*, 233 S.W.3d at 355.

counsel's invocation had in demonstrating that trial counsel misappropriated the appellant's funds, "[trial counsel]'s invocation of his own Fifth Amendment right . . . was *itself* an advancement of [trial counsel]'s interests above appellant's interests."[37] The court of appeals's reasoning in this regard seems to be that, because counsel was, by virtue of the fact that he had been accused of misappropriating his client's funds, "required to make a choice between advancing his client's interest in a fair trial"—by testifying truthfully about his use of the funds—"or advancing other interests (perhaps counsel's own)"—by invoking his own Fifth Amendment right—under *Acosta*, this case presents an actual conflict of interest.[38] The State has responded that, "far from choosing his own interests over those of the appellant, [trial counsel]'s invocation may have had the effect of protecting both of them."[39] In this regard, the State essentially conjectures that both "the appellant and [trial counsel] were involved in" some sort of unspecified, illegal "side business transactions," such that trial counsel's invocation would not only shield himself, but also the appellant, from potential exposure to criminal liability.[40]

We need not indulge in any of the State's vague theories that trial counsel potentially

---

[37] *Odelugo*, 410 S.W.3d at 427 (emphasis added).

[38] *Acosta*, 233 S.W.3d at 355.

[39] State's Petition for Discretionary Review at 12.

[40] *Id.*

engaged in a criminal conspiracy with his client to nevertheless conclude that the court of appeals erred to afford the appellant a new trial on the basis of trial counsel's invocation of his Fifth Amendment right. Instead, we need only observe that *if* trial counsel's refusal to testify at the hearing on the appellant's motion for new trial adversely affected the adequacy of the appellant's representation, that adverse effect would be limited to the appellant's motion for new trial, and could not, in any event, have affected the quality of the appellant's representation as to the plea and sentencing proceedings that preceded the motion. After all, counsel's invocation came only *after* the appellant was convicted and sentenced. Thus, given our determination that the trial court reasonably found that trial counsel had not rendered ineffective assistance pre-conviction (that is, in the events leading up the trial court's entry of a judgment of conviction, including the appellant's failure to make the promised restitution payments),[41] counsel's conduct after that point in time (*i.e.*, his assertion of his Fifth Amendment right) could only have affected what occurred *post*-conviction (*i.e.*, at the hearing on the motion for new trial). Were we even inclined to afford the appellant any relief on the basis of trial counsel's refusal to testify, it would be to grant him a new hearing on his motion for new trial—not summarily to grant him a new trial outright—so that he might obtain more meaningful legal representation in that setting.

But, of course, this discussion only serves to highlight a more fundamental problem with the court of appeals's reasoning in this regard: Trial counsel did not represent the

---

[41] *See* text at Part III-A, *ante*.

appellant in filing or arguing the motion for new trial. Rather, the appellant was represented by *appellate counsel* on his motion for new trial. In order for the appellant to obtain a new hearing on his motion on the merits of an ineffective-assistance claim, then, he would have to demonstrate that appellate counsel rendered ineffective assistance in his handling of the appellant's motion for new trial. And the appellant does not contend (indeed, the record would not support the conclusion) that, because *trial counsel* refused to testify, appellate counsel's representation of the appellant was constitutionally ineffective.

Trial counsel was perhaps the only party at the hearing on the motion with first-hand knowledge of the ultimate disposition of the appellant's funds. He knew what the appellant had asked him to do with the money, when the appellant asked him to do it, and for what purpose the request was made. But he was no longer tasked with advancing the appellant's interests on the motion for new trial—appellate counsel was. In this sense, at least with regard to the merits of the appellant's motion for new trial, trial counsel's role was essentially relegated to that of a witness, albeit a crucial one. That being the case, it cannot be said that trial counsel's decision deprived the appellant of his right to effective representation—which is, after all, the basis of a Sixth Amendment right-to-counsel claim, whether based on conflict of interest or not—on the motion for new trial. Accordingly, the court of appeals's conclusion that "[trial counsel]'s invocation of his own Fifth Amendment right . . . was itself an advancement of [trial counsel]'s interests above appellant's interests," even if true, does not ultimately avail the appellant as to the underlying conflict-of-interest claim.

**CONCLUSION**

The trial court did not abuse its discretion "in denying appellant's new-trial motion on the ground that his trial counsel had a conflict of interest,"[42] and the court of appeals erred to conclude otherwise. The judgment of the court of appeals is therefore reversed. Because the court of appeals sustained the appellant's first and second issues on appeal, it did not reach the appellant's "third and fourth issues, in which he argue[d] that the trial court erred in denying his new-trial motion on the ground that his trial counsel failed to adequately inform him of the immigration consequences of his guilty plea."[43] Accordingly, the cause is remanded to the court of appeals for that court to address the remaining issues "necessary to the final disposition" of the appellant's appeal from the judgment of conviction.[44]

DELIVERED:      SEPTEMBER 17, 2014
PUBLISH

---

[42] *Odelugo*, 410 S.W.3d at 427.

[43] *Id.*

[44] *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").