

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00252-CR

Luis **SANCHEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR6545
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  April 20, 2016

AFFIRMED

Luis Sanchez pled nolo contendere to indecency with a child by contact and was sentenced to eight years' confinement. Sanchez filed a motion for new trial, alleging ineffective assistance of counsel. Following a hearing on the motion, the trial court denied his request for a new trial, but granted Sanchez permission to appeal. In two issues on appeal, Sanchez asserts (1) trial counsel was ineffective and (2) his plea was involuntary based upon counsel's ineffective representation. We affirm.

## INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, Sanchez asserts his trial counsel was ineffective because his seven-page case file was devoid of any motions, correspondence, notes, case law, photos, or any evidence of an investigation; Sanchez entered his plea less than thirty days after counsel filed a notice of appearance and counsel never met with Sanchez during the time between filing the appearance and entry of the plea; no motions were filed, no investigator was hired, and no investigation was conducted; no subpoenas were issued for medical, school, or CPS records; his plea of nolo contendere was involuntary; and no witnesses were called at the sentencing hearing. Based on these complaints, Sanchez contends counsel was per se ineffective.

### A.    Standard of Review

Sanchez made his claim of ineffective assistance of counsel in a motion for new trial. We review a trial court's ruling on a motion for new trial for an abuse of discretion, "reversing only if the trial judge's opinion was clearly erroneous and arbitrary." *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *Id.* Under this deferential standard, we view the evidence in the light most favorable to the trial court's ruling. *Id.* We may not substitute our own judgment for that of the trial court, and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

To prevail on an ineffective assistance of counsel claim, a defendant must prove, by a preponderance of the evidence, that (1) counsel's performance was deficient, i.e., counsel's assistance fell below an objective standard of reasonableness, and (2) he was prejudiced by counsel's deficient performance, i.e., a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S.

668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Failure to make a showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Thompson*, 9 S.W.3d at 813.

Appellate courts indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that the complained-of action or omission might be considered sound trial strategy. *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012). "The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Id.* "The *Strickland* test is judged by the 'totality of the representation,' not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Id.* Thus, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. However, although appellate courts are hesitant to "'designate any error as per se ineffective assistance of counsel as a matter of law,'" it is possible that a single egregious error of omission or commission by [trial] counsel constitutes ineffective assistance." *Id.* (internal citation omitted).

**B.    Evidence at New Trial Hearing**

At the new trial hearing, trial counsel, Sanchez, and Sanchez's father testified. Sanchez's trial counsel, Jeffery Linick, testified he is a self-employed criminal defense attorney, who was first licensed to practice law in Illinois in 2007 and was later licensed in Texas in 2010. He said he had handled four indecency with a child by contact cases as lead counsel, although none were tried before a jury or to the bench. Linick acknowledged he filed his notice of appearance on January 20, 2015, and Sanchez entered his plea on February 18, 2015. Linick admitted he filed no motions on Sanchez's behalf and that "there wasn't a strategy involved by [not] filing the motions." He also admitted he did not file a motion to suppress the outcry statement or a motion for a witness

list, and he did not request an investigator. Linick stated "the strategy was not to challenge the outcry statement"; instead, "the strategy was one of inconsistencies or contradictions in the statements that the witness gave."

Linick admitted there was no strategy for not retaining an investigator or having subpoenas issued. And, he conceded he did not obtain telephone records of texts that, allegedly, showed the complainant's mother saying "I'm going to get you." Nor did he investigate the mother's background, which, allegedly, contained a theft by check case and a burglary case. Because Sanchez and the complainant's mother were in the process of divorcing when the abuse allegations were made, Linick agreed there was a motive to fabricate the allegations. However, he testified the defense was to present Sanchez's alibi and he had documents that would demonstrate Sanchez was not in the county on some of the dates alleged by the witness. He explained he did what was relevant to the alibi strategy, and "things that weren't relevant weren't done."

Linick said he was aware that Sanchez's father and fiancé both wanted to testify. Linick said he spoke to both of them, and he told them the original date of the sentencing hearing had been reset. However, Linick admitted he later refused to return the family's telephone calls because the family became threatening.

When asked whether he was aware that Sanchez had cirrhosis of the liver, but he nevertheless failed to present any mitigating medical evidence at sentencing, Linick replied that the information was contained in the pre-sentencing investigation report ("PSI"). When asked what strategy he had for asking that Sanchez be placed in a substance abuse felony placement facility even though sex offenders are not eligible, Linick said there was no strategy but he explained he wanted Sanchez's underlying substance abuse problems to be clear to the court and if Sanchez was ever released from prison, it would be best to address those issues now. Based on

Sanchez's medical condition, Linick said he also raised the issue of whether Sanchez would survive the prison term.

Regarding the PSI, Linick said that although Sanchez denied committing the offense, Linick told Sanchez he would be interviewed before entering the plea and "we didn't want to look like we were ducking responsibility for this." Linick said he told Sanchez "we didn't want to look like we're going to – that you're trying to minimize what happened, it would look bad, that would certainly be reflected in the PSI, and the judge would hold that against him."

On cross-examination by the State, Linick testified he did not coerce Sanchez into entering a plea of no contest, and both he and the trial court advised Sanchez of his rights to proceed to trial and to confront witnesses. Linick said Sanchez voluntarily waived his rights. When asked if he explained the specifics of the plea agreement to Sanchez, Linick replied:

> Yes. In fact, that was a big component of it because the whole issue of entering the plea was there was the threat and the possibility of having the case re-indicted as a continuing offense which would raise the minimum range of punishment to 25 years. So, it was actually a very lengthy discussion about the potential punishment both as it was indicted and pled and as it could have been re-indicted.[1]

Linick also denied telling Sanchez the most he could receive in punishment would be "rehab," and he extensively discussed the range of punishment to include deferred adjudication and prison time.[2]

Linick testified the case was originally set for trial and they had a reasonable defense, but on the morning of trial, he and Sanchez discussed the possibility that the State would dismiss the case and re-indict him. Linick explained:

---

[1] Linick later explained he meant "threat" metaphorically, and at no time did the State or any agent of the State threaten Sanchez into entering the plea.

[2] Sanchez filed an application for deferred adjudication or community supervision, which the trial court denied. Sanchez does not challenge this ruling on appeal.

Given that as it was currently indicted, we had an offer on the table that would — that would give [Sanchez] a cap. The cap would be lower than what the minimum offense would be. And, you know, we had a very lengthy discussion about the relative merits of proceeding under that strategy versus taking the huge leap of rolling the dice on a trial and the minimum might be 25 years.

When asked whether Sanchez understood the nature of the discussion the two had regarding a plea deal, Linick responded that he had "the sense that Mr. Sanchez understood the nature of what I was saying. He was able to respond to me. We had – we had a back and forth conversation about it. I didn't get the sense that he didn't – didn't understand the implications." When asked if Sanchez understood the charges he faced, Linick responded that Sanchez knew the charges and "[i]n fact, he was the one that was quite able to assist me in – in getting the documentation for the defense." Linick stated he would not have allowed Sanchez to enter a plea unless Sanchez understood the plea, the admonitions, and the potential punishment. Also, Linick said that prior to entering the plea, both he and Sanchez understood and knew what evidence the State would present in its case-in-chief. He testified Sanchez understood that with a plea of nolo contendere, the State needed to introduce evidence of the offense, the court "would almost certainly make a finding of guilt," and the "real fight would be over what the sentence should be."

After the plea, Linick said he reviewed the PSI and appealed to the trial court to reduce the sentence if the court denied Sanchez's application for deferred adjudication. Linick said the court gave Sanchez the opportunity to present evidence on his behalf. However, when the court asked Sanchez if he had anything to offer, Sanchez replied that he did not. When the trial court followed up by telling Sanchez "[n]ow is your chance[,] [w]hat do you want to tell me," Sanchez replied, "I just — you know, just the chance to go live my life like I was planning to."

Sanchez's father, Luis Sanchez, Sr., testified at the new trial hearing that he did not appear at his son's sentencing hearing because Linick did not tell him the hearing had been rescheduled to a new date. However, Luis admitted his son did not call him to tell him the new date. Luis said

if he had known the date, he would have appeared and "said favorable things" about his son. Luis was not asked to elaborate on what he would have said.

**C.      Conclusion**

We first note that "mere brevity of [client] consultation" does not by itself establish a claim of ineffective assistance of counsel, *see Ex parte Duffy*, 607 S.W.2d 507, 518 (Tex. Crim. App. 1980), *overruled on other grounds by Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999); and Sanchez has failed to explain how more time with his attorney would have yielded a different result at trial. Second, "[t]he failure to file pre-trial motions is not categorically deemed ineffective assistance of counsel because trial counsel may decide not to file pre-trial motions as part of his trial strategy." *Mares v. State*, 52 S.W.3d 886, 891 (Tex. App.—San Antonio 2001, pet. ref'd); *see also Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (reiterating trial "[c]ounsel is not required to engage in the filing of futile motions"). In this case, Sanchez complains about Linick's failure to file a motion for a witness list and a motion to suppress the outcry statement. Linick admitted he did not file these motions, but he explained his strategy was to not challenge the outcry and, instead, challenge inconsistencies or contradictions in the testimony.

Third, as to Sanchez's complaint regarding Linick's failure to request an investigator, conduct an investigation, or subpoena records, Linick explained the defense strategy was to present Sanchez's alibi and he had the necessary documents to show Sanchez was not in the county on some of the dates alleged by the complainant. Finally, Sanchez has failed to direct this court to evidence that his fiancé (who did not appear or testify at the new trial hearing) was available to testify or to evidence that his father's and fiancé's testimony would have benefitted him during the sentencing hearing. To obtain relief on an ineffective assistance of counsel claim based on uncalled witnesses, the appellant must show the witnesses were available to testify and their testimony would have been of some benefit to the defense. *Ex parte White*, 160 S.W.3d 46, 52

(Tex. Crim. App. 2004). In this case, we will not presume the fiancé was available or that her testimony or the testimony of Sanchez's father would have benefitted the defense.

On this record, we must conclude Sanchez failed to show, by a preponderance of the evidence, that counsel's performance was deficient, i.e., counsel's assistance fell below an objective standard of reasonableness.

**VOLUNTARINESS OF PLEA**

In his second and final issue on appeal, Sanchez asserts Linick rendered ineffective assistance of counsel because counsel misled Sanchez into believing that the "most he could receive was rehab," and because Linick asked that Sanchez be placed in a substance abuse felony placement facility despite being ineligible for such a placement. Sanchez contends Linick demonstrated "an obvious failure to understand the legal principles and applicable law involved in this type of case." Sanchez alleges the psychological pressure of being re-indicted and facing twenty-five years to life acted upon him in such a way as to make his plea involuntary.

**A.    Standard of Review**

When an appellant challenges the voluntariness of a plea entered upon the advice of counsel, contending that his counsel was ineffective, "the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ex Parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997); *see also Ex parte Barnaby*, 475 S.W.3d 316, 324 (Tex. Crim. App. 2015).

A record indicating the trial court properly admonished the defendant presents a prima facie showing that the plea was made voluntarily and knowingly. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Rodriguez v. State*, 933 S.W.2d 702, 705 (Tex. App.—San

Antonio 1996, pet. ref'd). If the record establishes the trial court properly admonished the defendant, the burden shifts to the defendant to show he entered the plea in question without understanding its consequences. *Martinez*, 981 S.W.2d at 197; *Rodriguez*, 933 S.W.2d at 706. When a defendant states at the plea hearing that he understands the nature of his plea and it is voluntary, he then has a heavy burden to show the plea was involuntary. *Id.* However, a plea is not voluntary if the defendant did not receive effective assistance of counsel because the choice to enter the plea was not an informed choice. *Labib v. State*, 239 S.W.3d 239, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

## B.     Evidence at New Trial Hearing

At the new trial hearing, the trial court had the transcript of the plea hearing during which the trial court admonished Sanchez about the range of punishment attached to the offense; told Sanchez the recommendation of the prosecuting attorney as to punishment was not binding on the court; asked Sanchez if he understood the plea agreement; informed Sanchez that if the court followed the agreement, there was no appeal; explained the length of sentence to be served before becoming eligible for parole; and confirmed Sanchez had spoken to his attorney about compliance under the Texas sex offender registration program.[3] Sanchez replied affirmatively when the trial court asked if he understood the court would find him guilty under the no contest plea if the evidence was sufficient. Sanchez answered "no" when the court asked if anyone had forced him "in any manner." In addition to the verbal admonishments, Sanchez signed an "Admonishment and Defendant's Waivers and Affidavit of Admonishments." Finally, the trial court twice informed Sanchez that deferred adjudication was "outside the agreement." We conclude the record establishes by prima facie evidence that Sanchez's plea was entered voluntarily. *See* TEX. CODE

---

[3] On appeal, Sanchez does not complain he was not properly admonished by the trial court under Texas Code of Criminal Procedure article 26.13.

CRIM. PROC. ANN. art. 26.13(a) (West Supp. 2015). Therefore, the burden shifted to Sanchez to demonstrate his plea was involuntary.

At the new trial hearing, Sanchez testified he and Linick discussed defenses, and when he went before the trial court to plead, Linick told him "to follow his lead and to — not to worry." According to Sanchez, Linick said he would "try to get probation and the most [the State] can — the most they can give . . . is rehab." Sanchez admitted Linick did not tell him he would get probation, but instead, that is what Linick "was fighting for." However, Sanchez insisted Linick told him the "most they can give me is rehab," and he did not know he would be sentenced to prison. Sanchez testified Linick told him he had to take the plea offer or the State would re-indict him. As a result, Sanchez said he felt "pressured" and he "had to sign" the plea deal. Sanchez said he wanted to plead not guilty.

Sanchez testified he could read, but did not understand what he read. However, he said he understood his application for deferred adjudication and community supervision meant he was applying for probation. But as to the other paperwork, such as the waiver and consent to stipulations of testimony, he said he did not understand what he was signing and he did not read all the paperwork, he just "signed everything real quick" because he was told he would get probation or "rehab."

On cross-examination, the State introduced into evidence the transcript from the sentencing hearing at which Sanchez acknowledged he was waiving his right to a jury, each allegation was a second degree felony with a minimum of two to twenty years' confinement and an optional fine, and he told the judge he understood the plea agreement. Sanchez insisted he was merely saying "yes, sir, yes, sir" because he did not understand. However, Sanchez admitted he had an extensive criminal history; he had, in the past, entered into other plea agreements; and he had, in the past,

been given probation and been sentenced to county jail. Sanchez admitted he knew that when entering into a plea agreement, he could get probation or jail time.

The State also showed Sanchez a copy of the PSI in which, when asked why he did not take his case to trial, he responded he chose not to because he was accustomed to being judged by the way he looks—facial tattoos—and he did not believe a jury would consider him sincere. Sanchez answered "yes" when asked if he weighed the risks with his attorney and decided that entering into a plea was a better idea than taking the case to trial. Nevertheless, Sanchez insisted he did not commit the alleged offense and that is why he did not accept any responsibility.[4]

Linick was asked about his previous characterization of the "threat" of re-indictment and he responded that when he spoke to the prosecutor, he presented evidence showing the State would have difficulty establishing some of the dates in the indictment. Based on this conversation, Linick said the State would not proceed that day with trial; instead, the State intended to dismiss the indictment and re-indict Sanchez. Linick thought it would be "more difficult to defend under the new indictment because the State [did not] have to prove exact dates, and so the defense would be weakened [and] the potential punishment would be dramatically increased." Linick believed he raised enough weaknesses in the indictment that the State intended to dismiss the indictment and re-indict Sanchez "no matter what." However, Linick believed that if Sanchez pled before the State dismissed the indictment, then his plea would fall under the old indictment, which included a lower punishment range.

---

[4] During the sentencing hearing, the State asked the court to deny Sanchez's application for deferred adjudication because "[i]n no way, shape or form has Mr. Sanchez ever accepted responsibility," nor has he accepted or acknowledged his guilt "in any way."

## C.   Conclusion

In analyzing the voluntariness of Sanchez's plea and whether Linick was ineffective, we note that Sanchez was admonished orally and in writing; and Sanchez signed the admonishments acknowledging that he understood them and was aware of the consequences of his plea, and had not been threatened, coerced, or placed in fear by any person to induce him to enter the plea. Sanchez also stated at the plea hearing that he understood the consequences of his plea. The trial court told Sanchez that deferred adjudication was "outside the agreement." We also note the trial court could have found Sanchez understood the plea process based upon his prior criminal history.

As the sole factfinder and judge of the credibility and weight of each piece of evidence, the trial court was entitled to accept or reject any part of Sanchez's or Linick's testimony. *Odelugo v. State*, 443 S.W.3d 131, 137 (Tex. Crim. App. 2014). The trial court could disbelieve any of the assertions upon which Sanchez's ineffective assistance of counsel claims are based, "so long as the basis for that disbelief is supported by at least one 'reasonable view of the record.'" *Id.* (citation omitted). "This is true even when the State does not deign to controvert the evidence, affidavit or otherwise, that the appellant presents." *Id.* In this case, if the trial court did not accept Sanchez's account of the events leading up to his plea as credible, the court would have acted within its discretion to find that Sanchez failed to carry his burden to establish that trial counsel was ineffective.

As to Sanchez's claim that he felt pressured to enter the plea on the day trial was to commence because Linick told him he had to take the plea offer or the State would re-indict him, "[a]n attorney advises a client based upon an evaluation of numerous factors and considerations." *Ex parte Niswanger*, 335 S.W.3d 611, 616 (Tex. Crim. App. 2011), *abrogated on other grounds by Cornwell v. State*, 471 S.W.3d 458 (Tex. Crim. App. 2015). In *Niswanger*, the Court of Criminal Appeals noted that trial counsel "had to balance, *inter alia*, two important issues: the

uncertainty of trial and the possible range of punishment." *Id.* (concluding "it was reasonable for Counsel to determine it prudent to advise a guilty plea in exchange for 10 years' imprisonment, 15 years less than the minimum sentence that could be imposed if he was found guilty at trial"). The same can be said here. Linick knew—and told Sanchez—that the State intended to re-indict him and the re-indictment carried a higher sentence. Therefore, taking the offered plea meant a lower punishment range. Also, "the record supports that [Sanchez] was agreeable to Counsel's plea advice and voluntarily followed the advice." *Id.*

On this record, we conclude Sanchez has not proven that counsel's representation fell below the objectively reasonable standard. Therefore, he failed to demonstrate that his plea of nolo contendere was unknowingly or involuntarily made because of ineffective assistance of trial counsel.

## CONCLUSION

We overrule Sanchez's issues on appeal and affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish