**AFFIRM; and Opinion Filed June 17, 2015.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01080-CR

### WALTER ALEXANDER RODRIGUEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 10**
**Dallas County, Texas**
**Trial Court Cause No. MA13-65137-L**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Walter Alexander Rodriguez appeals his conviction for the offense of assault-family

violence. In one issue, appellant argues that the trial court erred in denying his motion for new

trial based upon ineffective assistance of counsel. Because all dispositive issues are settled in

law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm.

### BACKGROUND

Appellant was charged by information with assault-family violence based upon allegedly

intentionally, knowingly, and recklessly causing bodily injury to the person he was dating.

Under an agreement with the State, he pleaded guilty and the trial court sentenced him to 210

days' imprisonment. Appellant filed a motion for new trial and subsequently amended the

motion.[1]  In the amended motion for new trial, appellant argued that his trial counsel rendered ineffective assistance of counsel because his counsel "encouraged [him] to sign a plea bargain in this case, advising him that there would be no harm regarding his immigration status."  Appellant contended that his "attorney advised [him] that he would be able to post an immigration bond after the plea 'with no problem'" and that he "therefore was induced to enter a plea of guilty to this charge through erroneous advice."  Appellant argued that he "therefore disregarded any further warnings regarding the consequences of his plea, relying instead upon the advice of his attorney."

The trial court held a hearing on the motion for new trial.  Both appellant and his trial counsel testified at the hearing.  Appellant testified that, before he signed the guilty plea, his attorney told him that he "had the eligibility to be out of immigration through a bond."  He further testified: "[H]e told me that I had to declare myself guilty so I will be able to leave and then I will be taken to immigration but I would be able to leave immigration through a bond of maybe [$]10,000 or $12,000, but and then, you see, when I went to immigration, they didn't give me any kind of opportunity[.]"  He testified that, at immigration, he "wasn't given anything" and immigration authorities told him that he would be sent to his country of origin, El Salvador, in about ten to fifteen days.  He testified on cross-examination:

> Really the only reason why I signed the paper is because he told me, you know, something different.  If I had known that by signing that document [I] WILL be taken to immigration without having any eligibility like he told me, I would not have signed it, and I would have stayed here and just be here the year or the two years that I was given.

---

[1] Appellant filed a motion for new trial and subsequently filed another motion for new trial.  He then filed an amended motion for new trial. The amended motion was the live motion at the time of the hearing on the motion for new trial.

Also on cross-examination, appellant testified that he only spoke with his attorney twice and that his attorney never explained the bond process to him.[2]  He also testified that he told the judge that he had not been forced to sign the plea and that he "had signed whatever [his] lawyer had recommended to" him.  He admitted that he signed the plea agreement and that he initialed the third paragraph of the plea agreement that stated: "If you are not a citizen of the United States of America, a plea of guilty or nolo contendere before me for the offense charged may result in your deportation, the exclusion of admission to this country, or a denial of naturalization under Federal law."

Appellant's trial counsel, Mark Fernandez, testified that he had been practicing law for fifteen years, criminal law for thirteen, and immigration law for ten and that most of his clients have legal status issues.  He testified that he was "not a hundred percent fluent" in Spanish, but that his assistants were fluent.  He also testified that he represented appellant over several months, came to court several times concerning appellant's case, and talked with two prosecutors about several deals that would give appellant "some type of immigration relief[.]"  He testified that he and his assistant—who was fluent in Spanish—met with appellant almost each case setting to update appellant on the status of his case and that almost every conversation with appellant involved his immigration status.  Fernandez testified that he explained that he was trying to obtain a stipulated bond for appellant and explained the procedure to obtain a bond and the consequences of obtaining or not obtaining a bond.  Fernandez testified that appellant asked questions about the stipulation process and Fernandez believed that appellant understood the process.  Fernandez explained that he communicated with the "immigration liaison[,]" Rick Bruner, to see if appellant qualified and that Bruner determined that appellant did not qualify for a stipulated bond.  In addition, Fernandez testified that, on the day of the plea:

_____

[2] Appellant also testified that his attorney did not show up for another scheduled meeting with him.

–3–

We'd talked to Mr. Rodriguez's family, and we had talk[ed] to Mr. Rodriguez several times about what his options were. We told him, again, told that he did not qualify for the stipulated bond, that our choices at this point were he had enough time for his back time but that would result in conviction, and he wouldn't have any relief at immigration or that we could wait for the judge to get back because he was on vacation.

We could have a trial, but it would probably be two months off, and if we won the case and it resulted in a not guilty, that there might be relief through immigration at that point. It was my understanding from being in the conversation that Mr. Rodriguez seemed frustrated that he'd have to wait two months and opted to take the conviction with his back time.

Fernandez testified that he did not force or coerce appellant to take the plea agreement and that he went over the options with appellant more than once including on the day when appellant entered his plea, and explained the options to appellant's family as well. He testified that he explained the terms of the plea agreement to appellant and he believed that appellant understood the terms of the plea agreement because they "went over his options and the consequences more than a couple of times." Fernandez also testified that appellant voluntarily signed his initial by paragraph 3 of the plea agreement, which concerned immigration consequences, and that it was the practice of the judge "to go over that paragraph and then have the defendant initial by that paragraph." He testified that he believed appellant "made a knowingly, voluntary plea" and the plea was "properly entered into[.]"

On cross-examination, Fernandez testified that the e-mail from the immigration liaison, Bruner, denying appellant's request for eligibility for an immigration bond did not provide an explanation for the denial. And Fernandez testified that a denial of eligibility by Bruner did not necessarily mean that the person would not get relief from immigration authorities. Fernandez explained that he was striving to negotiate a deal for a disorderly conduct offense in order for appellant "to be finished with his case, go to immigration, and still possibly have relief there." He also testified that, from his experience, it would be very difficult for anyone who signed a guilty plea associated with family violence to get relief from immigration. Fernandez testified

that he "never told him that he'd be eligible for an immigration bond if he signed a plea." On redirect examination, Fernandez confirmed that an interpreter was present when appellant signed the plea and, from Fernandez's understanding, appellant "understood what was being said during the plea" and that he understood what he signed when he initialed the third paragraph of the plea agreement.

The court denied appellant's motion for new trial. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). Where the motion for new trial alleges ineffective assistance of counsel, we must determine whether the trial court's denial of the motion for new trial and its resolution of the ineffective assistance of counsel claim were clearly wrong and outside the zone of reasonable disagreement. *Sanchez v. State*, 243 S.W.3d 57, 63 (Tex. App.—Houston [1st] 2007, pet. ref'd). When a trial court denies a motion for new trial, it abuses its discretion "only when no reasonable view of the record could support the trial court's ruling." *Holden*, 201 S.W.3d at 763. In ruling on a motion for new trial, the trial court is the sole factfinder and judge of the credibility and weight of the evidence and has the right to reject or accept any part of a witness's testimony. *Odelugo*, 443 S.W.3d 131, 137 (Tex. Crim. App. 2014). The court is "'within its right to disbelieve' *any* of the 'assertions upon which [the] appellant's claims of ineffective assistance of counsel are based,' so long as the basis for that disbelief is supported by at least one 'reasonable view of the record.'" *Id.* (quoting *Charles v. State*, 146 S.W.3d 204, 208, 212 (Tex. Crim. App. 2004), *superseded by rule on other grounds as stated in State v. Herndon*, 215 S.W.3d 901, 906 n.5 (Tex. Crim. App. 2007)).

### Voluntariness of Guilty Plea

A guilty plea must be entered knowingly, intelligently, and voluntarily to be consistent with due process. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *see* TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (West Supp. 2014). In order to be voluntary, "a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises." *Kniatt*, 206 S.W.3d at 664. If a defendant pleads guilty as a result of ineffective assistance of counsel, the plea is not knowing or voluntary. *Ex parte Moussazadeh*, 361 S.W.3d 684, 688–89 (Tex. Crim. App. 2012). Likewise, if a defendant pleads guilty based upon erroneous advice of counsel, the plea is not given voluntarily and knowingly. *Id.* at 689. Counsel has a duty to provide his client with advice concerning what plea to enter, and counsel's advice should be informed by adequate investigation of the facts of the case or counsel's reasonable decision that investigation was unnecessary. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). We determine the voluntariness of a guilty plea from the totality of the circumstances viewed in light of the entire record. *Ducker v. State*, 45 S.W.3d 791, 796 (Tex. App.—Dallas 2001, no pet.).

### Ineffective Assistance

When examining ineffective assistance of counsel claims, we apply the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (stating the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel). In order to obtain reversal based on ineffective assistance of counsel, the appellant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Padilla v. Kentucky*, 559 U.S.

356, 366 (2010); *Strickland*, 466 U.S. at 688, 694; *see Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013).

With respect to the first prong, we must be highly deferential in our review of counsel's performance. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). There is a strong presumption that the conduct of counsel was not deficient, *Nava*, 415 S.W.3d at 307–08, and that it "falls within a wide range of reasonable professional assistance," *Andrews*, 159 S.W.3d at 101. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). We "commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews*, 159 S.W.3d at 101. In the context of a claim that an appellant's plea was involuntary because of ineffective assistance of counsel, whether the plea was voluntary depends upon whether the attorney's "advice was within the range of competence demanded of attorneys in criminal cases[.]" *Harrington*, 310 S.W.3d at 458. In addition, in the context of the deportation consequences of a plea, "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'" *Padilla*, 559 U.S. at 371 (quoting *Hill*, 474 U.S. at 62 (White, J., concurring)). We judge the reasonableness of counsel's challenged conduct on the facts of the particular case and view it as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 101.

For the second prong, appellant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty to the charged offense and would have

insisted on going to trial." *Hill*, 474 U.S. at 59; *see Ex parte Moussazadeh*, 361 S.W.3d at 690–91; *Harrington*, 310 S.W.3d at 458. An appellant's failure to make the required showing of either deficient performance or sufficient prejudice negates our need to consider the other prong. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

### ARGUMENTS OF THE PARTIES

Appellant argues that the trial court erred in denying his motion for new trial because he was denied his right to counsel under the Sixth Amendment of the United States Constitution. *See* U.S. CONST. amend. VI. Appellant contends that his counsel did not fully explain the severity and nature of the charges and did not properly explain the consequences of the plea. Appellant argues that he was given erroneous advice that, after posting bond, he would "be released from immigration after pleading guilty to the offense of Assault Family Violence" and, as a result, his plea was not freely and voluntarily made. Appellant asserts that counsel has "an affirmative duty" since *Padilla v. Kentucky* to "accurately advise a defendant of any immigration consequences, including deportation." *See* 559 U.S. at 371. According to appellant, although Fernandez explained to appellant that he would be eligible for a bond at immigration and explained the terms of a plea, he did not explain that these avenues were mutually exclusive and, as a result, his performance fell below the standard of reasonableness.

Appellant admits that he was advised by the judge that a plea of no contest or of guilty could lead to deportation and that he "even initialed" next to the paragraph in the plea document that "discusses deportation" after he was admonished. But he argues that he testified that he had signed what his attorney recommended that he sign. Appellant argues that, even though the judge explained that deportation was possible, he "felt confident in the advice he had received from Mr. Fernandez and would be released into the United States." Appellant contends that Fernandez's failure to tell him that "assault family violence is a crime that leads to automatic

removal and deportation" was a "clear violation" of *Padilla* and he was "prejudiced by his attorney's deficiency."[3]

The State argues that the trial court did not abuse its discretion in denying the motion for new trial. The State contends that appellant did not establish that the representation by appellant's counsel fell below the prevailing standard of professional norms because the record does not support appellant's claim that "he received inaccurate information regarding the immigration consequences of his guilty plea." The State argues that the record contains evidence that (1) appellant was informed that his plea of guilty might result in deportation and he was not forced to sign the plea and (2) Fernandez's testimony contradicted appellant's testimony regarding the advice Fernandez provided to appellant concerning the immigration consequences of the plea. The State contends that the trial court, as the fact finder at the hearing on the motion for new trial, was entitled to find Fernandez's testimony more credible than appellant's testimony. The State argues that, as a result, the court could have reasonably concluded based on the evidence that Fernandez's representation of appellant—specifically his advice to appellant concerning his immigration status—was within the range of competence demanded of attorneys in criminal cases.

## ANALYSIS

We agree with the State that appellant has not established the first prong of the *Strickland* analysis: that his counsel's representation was deficient. Appellant and Fernandez presented contradicting testimony. Appellant testified that he only met with Fernandez twice. He also testified that, prior to his signing the plea, Fernandez told appellant that he was eligible to be

---

[3] Appellant also argues that (1) because he did not have complete information about his charges and the consequences of taking a plea, his plea should be considered a broken plea, (2) Fernandez should have realized, once it was clear that the district attorney would not reduce the charge against appellant, that the only way to avoid deportation was for appellant to be acquitted at trial, and (3) Fernandez should have "done a little investigating" and presented an affidavit of non-prosecution by the complainant to the prosecution before the plea and, if unsuccessful, proceeded to trial and appellant "would have been acquitted or the charges dismissed for want of a complaining witness." These issues were not in the amended motion for new trial before the trial court or raised at the hearing. Because appellant did not present these grounds to the trial court, we are unable to consider these arguments on appeal. TEX. R. APP. P. 33.1(a).

"out of immigration through a bond" and that he would be able to "leave immigration through a bond of maybe [$]10,000 or $12,000[.]" He also testified that "the only reason" that he signed the plea was because Fernandez told him "something different" and he would not have signed the document if he had known that he would "be taken to immigration without having any eligibility[.]" But Fernandez's testimony contradicted appellant's account. Fernandez testified that he met with appellant before almost every case setting and that almost every conversation with appellant involved his immigration status. Fernandez testified that he explained to appellant that he tried to obtain a stipulated bond for appellant but that the immigration liaison determined that appellant was not eligible. And Fernandez described his conversation with appellant on the day of the plea, noting that he had talked with appellant "several times about what his options were": that because he did not qualify for the stipulated bond, the "choices at this point" were that he could get credit for his back time "but that would result in conviction" and that "he wouldn't have any relief at immigration" or that they could have a trial that would probably be "two months off" and, if he was found not guilty "there might be relief through immigration at that point." Fernandez testified that it was his "understanding from being in the conversation that Mr. Rodriguez seemed frustrated that he'd have to wait two months and opted to take the conviction with his back time."

In addition, although appellant testified that Fernandez did not explain the bond process, Fernandez testified that he explained the stipulated bond process to appellant and his efforts to try to obtain a stipulated bond for appellant. Fernandez testified that appellant asked questions about the process and it was Fernandez's understanding that appellant understood the process.

The record also shows that appellant admitted to signing the plea and to placing his initials by the third paragraph of the plea document that stated that his plea of guilty "may result in [his] deportation" and he testified that he had not been forced to do so. Appellant also

–10–

testified that the trial court warned him about his immigration status before he took the plea. In addition, Fernandez testified that he did not coerce or force appellant to take the plea agreement, that he "went over his options and the consequences more than a couple of times[,]" and that he believed that appellant understood the terms of the plea agreement. Fernandez also testified that he "never told him that he'd be eligible for an immigration bond if he signed a plea."

The trial court, as the finder of fact at the hearing, was the sole judge of the credibility and weight of the appellant's and Fernandez's testimony and had the right to reject any part of appellant's testimony and accept Fernandez's testimony. *See Odelugo*, 443 S.W.3d at 137. Based on the record, we conclude that the trial court did not abuse its discretion in denying the motion for new trial because appellant did not establish that Fernandez's representation fell outside the range of reasonable professional assistance. *See Andrews*, 159 S.W.3d at 101. Although it was Fernandez's duty to provide appellant with "available advice about an issue like deportation and the failure to do so" would satisfy the first prong of the *Strickland* analysis, *Padilla*, 559 U.S. at 371, based on the record, the trial judge could have reasonably concluded that Fernandez provided appellant with available advice concerning the deportation consequences of his guilty plea. We overrule appellant's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)

141080F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WALTER ALEXANDER RODRIGUEZ,
Appellant

No. 05-14-01080-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court
No. 10, Dallas County, Texas
Trial Court Cause No. MA13-65137-L.
Opinion delivered by Justice Lang-Miers,
Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of June, 2015.