**Opinion filed January 11, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00004-CR

_____

### HENRY KRAHN HILDEBRANDT, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**

**Gaines County, Texas**

**Trial Court Cause No. 17-4802**

## M E M O R A N D U M   O P I N I O N

Appellant, Henry Krahn Hildebrandt, originally pleaded guilty to second-degree felony theft. *See* TEX. PENAL CODE ANN. § 31.03(e)(6) (West Supp. 2023). The trial court deferred a finding of guilt and placed Appellant on community supervision for five years. The State subsequently filed a motion to adjudicate Appellant's guilt. In the motion, the State alleged eleven violations of the terms and conditions of Appellant's community supervision. At the hearing on the State's motion to adjudicate, the trial court found that Appellant violated numerous terms

and conditions, including that he committed a new offense when he possessed drug paraphernalia, consumed a controlled substance when he used methamphetamine on two occasions, failed to submit to a urinalysis test, and failed to report to the Gaines County Community Supervision and Corrections Department on several occasions. The trial court adjudicated Appellant guilty of the charged offense, revoked his community supervision, and assessed his punishment at confinement for a term of twenty years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant brings two issues on appeal. Both issues are related to his claim that he received ineffective assistance of counsel during the punishment phase of the hearing on the State's motion to adjudicate. We affirm.

*Background Facts*

The indictment alleged that in July 2017, Appellant unlawfully appropriated a John Deere tractor valued at more than $150,000 but less than $300,000. Appellant subsequently executed a stipulation of evidence wherein he stipulated to "each and every element of the offense set out in the charging instrument." Pursuant to the terms of a plea bargain agreement, the trial court accepted Appellant's guilty plea, deferred a finding of guilt, and placed Appellant on community supervision for five years.

This appeal arises from the State's motion to adjudicate filed in 2021. At the hearing on the motion to adjudicate, Liz Vasquez, Appellant's community supervision officer, testified that Appellant admitted to using methamphetamines on October 1, 2019, and December 14, 2019. She further testified that Appellant failed to take a urinalysis test on October 3, 2020. Vasquez also testified that Appellant failed to report on several occasions, failed to report an employment change, and left the county without permission by traveling to Mexico. Vasquez also testified that

2

Appellant did not successfully complete his work at the Gaines County Rehabilitation Center, and that he was charged with possession of drug paraphernalia while on community supervision.

Sergeant Natally Villegas of the Seminole Police Department testified that she stopped Appellant on March 31, 2019 because he was not wearing a seat belt while he was driving. She detected the odor of alcohol when she made contact with Appellant. After a K-9 alerted on the vehicle that Appellant was driving, Sergeant Villegas conducted a search of the vehicle. She found a small black scale with a white crystal-like residue on it in the vehicle's toolbox.

At the hearing on the State's motion to adjudicate, Appellant testified during each stage of the proceeding. On the matter of revocation, Appellant admitted that he failed to report on several occasions as required by the terms and conditions of his community supervision. He testified that he failed to report because "[he] was under the influence of methamphetamines." He also admitted that the scales found by Sergeant Villegas belonged to him. After attributing his violations to his use of methamphetamine, Appellant made the following statement:

> Well, I can say one thing, that I'm clean and sober and I gave my life to Jesus Christ. And it's not me that's living anymore. I tried living my way. It's Christ that lives in me now. And I'm just going to live for him. And I'm clean and sober, and -- and I would just ask for a second chance.

After the trial court announced its findings on the violations of community supervision alleged, the trial court received punishment evidence. Deputy Joseph Vest with the Gaines County Sheriff's Office testified that he was called concerning a report of a stolen trailer in January 2021. The men who took the trailer, Appellant and a friend, returned it when confronted by its owner. However, the men left before police arrived, and they later drove into a cattle guard gate that belonged to another person. Appellant was arrested for felony theft of property and criminal mischief as

3

a result of the incident. Appellant's trial counsel recalled Appellant to testify about this incident and the sentencing. Appellant testified that a friend had called to ask Appellant if he would help move a trailer for him. However, when Appellant hooked onto the trailer and drove away, a person began following them; in response, Appellant's friend told him not to stop because he "had charges." Appellant testified that he then returned the trailer and talked to the person, attempting to explain to him "what happened," but the person called the authorities. Appellant testified that he then "ended up taking off" and left without waiting for the authorities because his friend "kept on telling me that . . . he couldn't go to jail and that he had too many charges."

At the conclusion of the hearing, the trial court stated as follows:

> I do find that there is sufficient evidence to support the allegations in the State's application to adjudicate your guilt. I find you guilty of the initial offense of theft of property.

> Before I assess your punishment, I'm not -- you know, you can ask the attorneys. I'm -- I'm not usually real big on, you know, giving long speeches and, you know, this and that, and so I'm not going to do too much of that here. But, you know, sir, you got probation. You stole [a] 150,000-plus dollar tractor. You got probation. I mean, that was your second or third chance. While you're on probation, you stopped showing up; you were doing drugs. Other than paying most of your money, you just really didn't take probation very seriously.

> I -- I applaud the fact that you found Jesus. I appreciate that. I also think that for a lot of people -- you know, "Ah, just tell the Judge you found Jesus and he'll let me back out." It doesn't work that way around here.

> While you're on probation for stealing something, you get caught stealing something again. And you -- you know -- and did you -- you know, if you were truly innocent, did you stick around -- let the other guy flee and you stick around to -- you know, so that you can explain it away? No. You took off and you caused some damage on the way out.

4

Sir, I assess your punishment at 20 years imprisonment in the Texas Department of Criminal Justice.

Appellant subsequently filed a motion for new trial. Among other things, he alleged in the motion that his trial counsel was ineffective. Appellant asserted that his trial counsel failed to investigate relevant circumstances in Appellant's life that could have been used as mitigation evidence during punishment. Appellant listed various friends and family that his trial counsel could have called to testify about Appellant's previous addiction to controlled substances, history of mental health issues, recent sobriety, and religious conversion. Appellant further asserted that his trial counsel (1) had little contact with him prior to the hearing; (2) did not explain the "significance of the hearing" to him, thus preventing Appellant from making an informed decision as to whether he should have accepted a plea bargain or proceeded with a contested hearing; (3) called Appellant to testify twice, despite failing to adequately prepare him to testify; (4) failed to lodge various objections; (5) elicited damaging testimony from Appellant; and (6) represented Appellant's codefendant in a felony theft case, "creating an actual conflict of interest."

Appellant attached two affidavits in support of the motion for new trial. Appellant executed one of the affidavits and his girlfriend, Tonya Espinoza, executed the other one. Both Appellant and Espinoza averred that Appellant's trial counsel failed to adequately investigate Appellant's life prior to the revocation hearing, failed to apprise Appellant of the importance of the revocation hearing, and failed to present mitigating evidence that would have been readily available through the testimony of Appellant's family and friends. They also alleged that Appellant was harmed by his trial counsel's "lack of preparation." However, neither affidavit addressed Appellant's contention that his trial counsel had a conflict of interest.

Appellant's appellate attorney requested, via letter, the trial court to set the motion for new trial for a hearing. Appellant requested that a hearing be set by a

5

specified date in order to avoid the motion for new trial being overruled by operation of law. The trial court responded to counsel's letter as follows: "I did previously review the documents you emailed to me. I do not believe that the defendant is entitled to a hearing based on the evidence presented. Thank you." The motion for new trial was subsequently overruled by operation of law.

*Analysis*

Appellant asserts in his first issue that the trial court erred by refusing to hold an evidentiary hearing on his motion for new trial. He contends that the lack of a hearing deprived him of the opportunity to prove that he received ineffective assistance of counsel. Appellant contends in his second issue that he received ineffective assistance of counsel during the punishment phase and that a new punishment hearing is required.

To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a

6

claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

With respect to Appellant's first issue, a defendant's right to a hearing on a motion for new trial is not absolute. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). As a general rule, a trial court should hold a hearing if the motion and attached affidavits raise matters that are not determinable from the record and that could entitle the accused to relief. *Id.* When examining a trial court's denial of a hearing on a motion for new trial, we review for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339–40 (Tex. Crim. App. 2009). In so doing, we reverse only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

To be entitled to a hearing on a motion for new trial alleging ineffective assistance of counsel, a defendant must allege sufficient facts from which a trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of the proceeding would have been different. *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009); *Smith*, 286 S.W.3d at 340-41.

We first note that Appellant made an allegation in his motion for new trial that his trial counsel had a conflict of interest because he represented Appellant and a codefendant at the same time. However, he did not support this contention in the

7

affidavits that he attached to the motions. On appeal, Appellant makes the following contention at the end of his argument in support of his first issue: "Moreover, because trial counsel represented a co-defendant—Russell Jimenez—in the new felony offenses that the State presented during the sentencing hearing, important questions exist whether trial counsel labored under an actual conflict of interest." This is the entirety of the appellate argument made by Appellant concerning an alleged conflict of interest.[1]

An attorney's conflict of interest may result in ineffective assistance of counsel. *Ex parte Morrow*, 952 S.W.2d 530, 538 (Tex. Crim. App. 1997) (citing *Strickland*, 466 U.S. at 692). The Sixth Amendment guarantees the right to reasonably effective assistance of counsel, which includes the right to conflict-free representation. *See Strickland*, 466 U.S. at 692; *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980). In the case of a conflict of interest, the appellant must demonstrate that (1) trial counsel was burdened by an actual conflict of interest and (2) the conflict actually affected the adequacy of counsel's representation. *Cuyler*, 446 U.S. at 349–50; *Acosta v. State*, 233 S.W.3d 349, 356 (Tex. Crim. App. 2007) (citing *Cuyler*).

Regarding the first *Cuyler* prong, "[a]n 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Acosta*, 233 S.W.3d at 355 (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)). An appellant making an ineffective-assistance claim predicated on a conflict of interest must demonstrate the existence of the conflict by a preponderance of the evidence. *Odelugo v. State*, 443 S.W.3d 131, 136

---

[1]Appellant does not argue a conflict of interest with respect to his second issue, which alleges ineffective assistance of counsel.

(Tex. Crim. App. 2014).  If an appellant fails to present any evidence on the issue or if the evidence "'is in perfect equipoise,' the appellant's claim will fail."  *Id.* at 136–37 (quoting *Broxton v. State*, 909 S.W.2d 912, 920 (Tex. Crim. App. 1995)).

Joint representation of codefendants creates a potential conflict, but it is insufficient, in and of itself, to demonstrate an actual conflict necessary for an ineffective-assistance claim.  *Johnson v. State*, 583 S.W.3d 300, 316 (Tex. App.—Fort Worth 2019, pet. ref'd).  Instead, an actual conflict of interest exists when the attorney actively represents conflicting interests.  *Acosta*, 233 S.W.3d at 355 (citing *Cuyler*, 446 U.S. at 349–50).

Regarding the second *Cuyler* prong, an appellant's allegation alone that counsel has not been zealous in his representation does not establish an actual conflict of interest.  *See Acosta*, 233 S.W.3d at 355 (noting that the appellant must show that trial counsel "actually acted" on behalf of other interests at trial).  "[T]he possibility of conflict is insufficient to impugn a criminal conviction."  *Cuyler*, 446 U.S. at 350.  Theorizing about possible conflicts does not satisfy an appellant's burden; rather, "[a]n appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one [client's interest] but harmful to the other [client's interest]."  *Johnson*, 583 S.W.3d at 315 (first alteration in original) (quoting *Malek v. State*, No. 03-10-00534-CR, 2012 WL 370551, at *7 (Tex. App.—Austin Feb. 1, 2012, pet. ref'd) (mem. op. on reh'g, not designated for publication)).

Here, Appellant asserted a conflict of interest in his motion for new trial, but he did not support the assertion with any evidence.  Appellant's assertions amount to merely theorizing about a potential conflict, which is insufficient to sustain his

burden. *Id.* at 315. Thus, Appellant has failed to demonstrate an actual conflict of interest, or a need for a hearing on the allegation.

Appellant directs the bulk of his argument in support of his first issue on the allegation that his trial counsel was not prepared for the punishment hearing and did not present sufficient mitigation evidence. Appellant contends that the omitted mitigation evidence was material to the trial court's determination of his sentence. Specifically, Appellant contends that his counsel could have presented a more compelling mitigation case.

We direct our attention to *Strickland's* prejudice prong. The trial court was the factfinder both during the punishment phase of trial and in deciding whether a hearing was necessary on Appellant's claim of ineffective assistance of counsel. Thus, the trial court was in the unique position of determining what effect, if any, the mitigation evidence that Appellant felt should have been offered would have had on the trial court's sentencing decision. The Texas Court of Criminal Appeals addressed a similar situation in *Smith*. As stated by the court:

> [T]he decision of what punishment to assess after adjudicating the defendant guilty is a purely normative process, not intrinsically factbound, and is left to the unfettered discretion of the trial judge. Only the trial judge in this case could have known what factors he took into consideration in assessing the original punishment, and only he would know how the defendant's testimony, if allowed, might have affected that assessment. When the trial judge declined to hold a hearing on the appellant's motion for new trial, we presume that he knew from the affidavits what the appellant's testimony at a hearing would be, and that, even assuming any such testimony to be accurate and reliable, knew that it would not have influenced his ultimate normative judgment. In that event, the trial court could have concluded, without the necessity of a hearing, that the appellant suffered no prejudice from any deficiency on his trial counsel's part with respect to the assessment of punishment for the original offense.

286 S.W.3d at 344–45; *see Riley v. State*, 378 S.W.3d 453, 459 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018) ("We must presume that all findings made by the trial judge [by denying motion for new trial alleging ineffective assistance of counsel] were made in favor of the prevailing party, and hence, we assume that the trial judge implicitly found that there was no reasonable probability that the result of the proceedings would have been different.").

Here, when declining to hold a hearing on Appellant's motion for new trial, the trial court knew from the affidavits the mitigation evidence that Appellant believed should have been offered. We presume that the trial court could have concluded that Appellant suffered no prejudice from his trial counsel's alleged deficiency with regard to the punishment assessed by the trial court.[2] *See Smith*, 286 S.W.3d at 344–45; *Arriaga v. State*, 335 S.W.3d 331, 337 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). In other words, the trial court knew that the evidence Appellant sought to offer would not have affected its decision to impose the twenty-year sentence. Thus, Appellant did not establish reasonable grounds showing that, under *Strickland*, he could prevail on his claim of ineffective assistance of counsel. Accordingly, the trial court did not abuse its discretion by not conducting a hearing on Appellant's motion for new trial. We overrule Appellant's first issue.

With respect to Appellant's second issue, when an appellant presents his ineffective-assistance claim to the trial court in a motion for new trial, an appellate court analyzes that claim as a challenge to the denial of the motion for new trial. *Riley v. State*, 378 S.W.3d at 457. "We review a trial court's grant or denial of a

---

[2]We note that Gaines County is served by a single district court. Accordingly, the same rationale with respect to the sentence imposed by the trial court would also apply to Appellant's claim that his trial counsel had a conflict of interest because the trial court presided over all criminal proceedings against Appellant and his codefendant.

motion for new trial for an abuse of discretion." *State v. Gutierrez*, 541 S.W.3d 91, 97–98 (Tex. Crim. App. 2017). In ruling on a motion for new trial, we apply a deferential standard of review; the trial judge has "the right to accept or reject any part" of a witness's testimony when ruling on a motion for new trial, including evidence presented in an uncontroverted affidavit. *Najar v. State*, 618 S.W.3d 366, 371–72 (Tex. Crim. App. 2021) (quoting *Beck v. State*, 573 S.W.2d 786, 791 (Tex. Crim. App. 1978)); *Colyer v. State*, 428 S.W.3d. 117, 122, 126 (Tex. Crim. App. 2014).

Our analysis of Appellant's first issue with respect to *Strickland's* prejudice prong is dispositive of his second issue. The record does not show a reasonable probability that the result of the punishment phase would have been different but for trial counsel's allegedly deficient performance. As we noted above, the trial court is the factfinder that sentenced Appellant. Thus, the trial court was uniquely positioned to determine whether the matters alleged in the motion for new trial would have affected its decision on punishment. The trial court's decision to neither grant Appellant's request for a hearing nor grant the motion for new trial is consistent with the trial court's stated basis for imposing its sentence of confinement. The trial court indicated its dissatisfaction with Appellant's performance while on deferred adjudication community supervision as the reason for its sentence, and that the trial court was not swayed by defendants that have, or allege to have, a religious conversion. Accordingly, the trial court did not abuse its discretion by not granting Appellant's motion for new trial based upon his allegation of ineffective assistance of counsel at punishment. We overrule Appellant's second issue.

12

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


January 11, 2024

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.